M 1659 592

**PLEASE RECORD AND RETURN TO**
NATIONAL ABSTRACT AGENCY, INC
1600 WALNUT STREET
SUITE 507
PHILA, PA 19102
AHN; *J Ait? * J * NORTON*

000376

(Space Above This Line For Recording Data)

State of Pennsylvania

# MORTGAGE

MIA Cate No.

THIS MORTGAGE ("Security Instrument") is given on JUNE 2 6TH , 1995 . The Mortgagor is
AR.CY CRUTE

("Borrower"). This Security Instrument Is given to
MERIDIAN BANK

which is organized and existing under the laws of THE COMMONWEALTH OF PENNSYLVANIA , and whose
address is .35 NORTH 6 TH STREET
y READING, PA 19601 ("Lender*). Borrower owes Lender the principal sum of
THIRTY-POUR THOUSAND TWO HUNDRED-TWO AND NO/lOd .

Dollars (U.S. $ ; 34/202.00 . j. This debt is evidenced by. Borrower's note dated the same date
this Security lriAtiutncni ("N6tc")f which provides for monthly payments, with the full debt, if not paid earlier, due anfe
payable.on .'JliLy- 01/ 2025 . This Security Instrument secures'to Lender: (a) thtr
rcpaymcnt of ihc .cfcbt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the**
payment of all Olher.sums, with interest, advanced under paragraph 6lo protect the security of this Security Instrument^,
and (c) the performance of Borrower's covenants and agreements Under this Security Instrument and the Note. For thipr
purpose, Borrower does hereby m&lgage, grant abd convey id Lender the following described property located in ＝
■    *' 14 ..    -    PHILADELPHIA    .' County, Pennsylvania: ui

WING; MORE ^^tigi^RtY-pESGRlByb ACCORDING TO A LEGAL DESCRIPTION ATTACHED
HERETO AND MADE A PART HEREOF.

which has the address of 6332 REEDLAND STREET j^XTyjOF PHILADELPHIA
Pennsylvania 191**    ('Property Address');
AC.

T<X3 ETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtcnahc^TeuU,'rt^^ties, mineral,bti.ibd.gas tights and profits, water rights and stock and. all fixtures how or
hereafter a part of the property. Aft'replacements and additions shall hho be covered by this Security Instrument. AU of
the foregoing is referred to inthis Seoinfy Instrument as the "Property/

BORROWER CO VENANTSthit Borrower is lawfully seized '« the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property « unencumbered, except for encumbrances of record.
Borrow wirrinU and will defend generally thc tnfc to t be Property against aJJ claims and demands, subject tn any
ehcUmbrahees of record. ■'    ...    .    / *.'•; *    '.    *  ••\

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest
on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payments of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment,
together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special
assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c)
premiums for insurance required by paragraph 4.

MSM 4R(PA)    Page 1 of 5    Pennsylvania Mortgage - 2/91

omeiNAi^

*First / trican Title Insurance & )pahy*

-• N '1659 593.

Commitment N █████

## SCHEDULE "C"

ALL THAT CERTAIN lot or piece of ground with the building! and improvement! thereon erected,

SITUATE on the Southeast side of Reediand Street at the distance of Two hundred forty feet Southwest from the Southwest side of Sixty-third Street, in the Fortieth Ward of the City of Philadelphia.

CONTAINING In front or breadth on the said Reedland Street Fifteen feet and extending of that width in length Or depth Southcaseward between parallel lines at right angles to said Rcedland Street Sixty-five feet to a certain Three feet Four Inches wide alley extending from Sixty-third Sweet to Slxty-fourth Street.

BEING 6332 Reedland Street.

BEING ''WE SAME PREMISES WHICH JAMES JOSEPH MCKINNEY JR ♦,. ELIZABETH A MCKINNEY . BY DEED BEARING DATE THE 26TH DAY OF JUNE 1995 AND RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS IN AND FOR PHILADELPHIA COUNTY, COMMONWEALTH OF PENNSYLVANIA DID GRANT AND CONVEY UNTO ARCY CRUTE IN FEE.      .      z−

TOGETHER With the free and cohunon use, right, liberty and privilege of the aforesaid alley at and for a passageway and watercourse at all times hereafter forever.

•..ST. CODE/HOUSE NO: █████

C)TY REGISTRY; 39 S .13 - 264

FKM/MET

Case 23-11870-amc    Doc 107-3    Filed 05/29/26    Entered 05/29/26 12:0...

Iri any year in which the Lender mbst pay a mortgage insurance premium to the Secretary of Housing and Urban Devciopement ("Secretary"), or in any year in which such premiumwouhTbc required M Lender O'Keia uie Security Instrument, each monthly payment shall also include either (1) a sum for the annual mortgage insurance premium to be paid, by Lender to the Secretary, or (11) a monthly charge instead of a mortgage insurance premium it this Security Instrument is held by the Secretary, in a reasonable amount ol be determined by the Secretary. Except for the monthly charge by the Secretary, these Items arc called "Escrow Items" and the sums paid to the Lender arc called "Escrow Funds."

Lender may, at any limo, collect and hold amounts for Escrow Items in and aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 cl stiq. and implementng regulations, 24 CFR Part 3500, as they may be amended from time io time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow items exceed amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the mounts => of funds held by Lender at any time are not sufficient to pay the Escrow Items When due, Lender may notify the Borrower and require Borrower to make up the shortage or deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by (his Security Instrument, if Borrower fenders to Lender the full payment of all such stnfcfc, Borrower's account shall be'crcdiled with the balance remaining for all installment sums (a), (b), and (c) bud any mortgage insurance premium installment that Lender has not become Obligated to pay to the Secretary, and Lender shaji'promptly refund any excess to Borrower, immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), arid (c).

3. Application.of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, ld the nfarf^agc insurance premium 16 be'pdid by Lender to the Secretary or'to the monthly charge by the Secretary instead Of the monthly mortgage insurance pfchiiitin;
Seepnd. to" any taxes,-special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums,; as required; -• ■5 •• *
Think. to interest due under the Note;
Fourth. t° amortization of the principal of the Note;
Eifih. to late charges due under, the Note.

4; Fire/FldridUnd OtherHazard Insurance. Borrower shall insure all improvements oh1 the Property, whether now in crislcnce.'0r'Xub^6qUehtly^ereded^iagaihst any hazards/casualties, and contingencies,:including fire, for which Lenderi^qUir^'iidurariteVThUmsurarice^haUbe maintained in the amounts and forthc-periods that Lender requires. Borrower iKali Olso insure all improvement bn the'Property/ whether how in existence■'&'Subsequently. eroded, against loss by, floods to theextent required by iheSCCretriry.-Xll insurance shall be carried with* companies approved .by Lender. The insurance'policies a&d'Ony renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender,

.ih tlib evenVof I6&, jBprrowdr'shyi-^ve^ndc^imfopdiate^qoti^by iiiaiK lender; may tri^ri' proof, of loss if. not ■ made promptly;by Borrower.'Bach insurancecompa^^ concerned is hereby authorized and directed to make payment for suchi·jdsS mrMtiy-'tb'LCnder, instead of t'6 Borrower(p·hdc^riirifly. Alt oraiiyjiaH'; ofihe'Wdrance■ proceeds Way be'·appJiM·..b^·l^n^rfat'ii^"ogtiQn, either'.(a) ■fo'iiefreulT^&h^ the indebtedness under the Note and this Security iristrpmdht;fii&L.tpknyfdelinqugnvairiduhts'applied.:in'the'6?detjiJ Raragt.aph'3, and then' fojprcpaymcnt of principal, or (B) to IhfcMestoiatidfcf'bf 'repair of the damaged property;- Any application Of theprdc£cd<fpthe principal shall not extend or postpone the due date of the monthly .payments which are referred io in Paragraph 2, or change the amount of such payments.'Ahy excess insurance proceeds'over art amount required to' pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to (he entity legally entitled (hereto.

In the event of foreclosure pf this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, ail right, tide arid interest of Borrower in and to insurance policies in'force shall pass to the purchaser.

5? Occupancy.Preservation, Maintenance and Protection of the Property.Bptrower'sLoan Application; Leasehold*. BdrrbWer shall occupy, establish, and use the Property as borrower's principal residence within sixty days after the execution of this' Security Instrument arid shall continue to occupy the Property aS Borrower's principal residence for-at least ofte year after the date of occupancy, Unless the Scti^ary determines this requirement Will cause Undue hardship for Borrower, or unless extenuating' circumstances exist 'which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances,.;Bolrrowbr shall ifot Commit Waste or destroy, damage or substantially chari^e the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Pr operty if the Property is vacant or abandoned or the loan is in default; Lender may lake reasonable action to protect and preserve such vacant or abandoned Property?Borrower'shall also bri'iri default if BrifroWer, during the Irian application process, gave materially fate or inaccurate infomitioa or statements to Lender (or failed to provide Lender with any material information) in connection with the Joan evidenced by the Note, including, but not limited to. fcprescntmkxM concerning Borrower's occupancy of the Property as a principal residence; If this Security Instrument H <m a leasehold, Borrower shall comply with the ptwufoo* of the lease; If Borrower acquires fee thio to..the Prbperty/the keeaebold and fee tW. 8haM not be a&ergod rmtew Lender agrees to the merger in writing.

**M 1659 595**

6. Charges to Borrower and Protection of .lender's Rights in the Property. Borrower shall pay all governmental of municipal charges, fines mid iiiijmsilions that arc not inducted in Paragraph 2, Borrower s shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest fa the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments tit* the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained fa this Security Instrument, *or there* k a legal proceeding that may significantly affect Lender's rights fa the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay Whatever is necessary to protect (he Value < if the Property and Lender's rights In the Property;Including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. Those amounts shall bear interest from the dote of disbursement, at the Note rate, and al the option of the Lender, shall be immediately due and payable.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned arid shall be paid to lender to the extent of the fall amount of the Indebtedness that remains unpaid under the Note and this Security Instrument Lender shall apply such proceeds td the reduction of the Indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied-to the order provided in Paragraph 3, and then to prepayment of principal. Atty application ofthb proceeds (0 the principal shall hot extefid ot postpone the due date of the monthly payments, which are referred Lb in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay aU outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. Fees. Lender may collect fees'and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt,

(a) Default. Lender, may, except ais limited : by regulations issued by the.Secretary in'(he case of payment defaults, ■requirciiiiimecfiate^ayin'eiit Th'ftiiFpf all sums secured by this Security Ihstfiiirieht if:
(i) Borrower .defaultsb£ failing to pay fa-full any monthly payment required by this Security Instrument prior
• tb brW th6 due' date of-ihe heXt monthly payment, or
(ii/ Bdriowef defaults By failing, for a period of thirty days,to'perform any other obligations contained in this Security Instrument.

•-.(b) Sale Without(jredif **Approval,** : tender shall, if per^ifttd^by a^tidable-law and the prior approval of
■■■• the Secretary, require immediate payment in full of sJl'the'kufas secured by this Security Instrument if:
' (i) All of part of'thePfpperty, ora beneficial interest in.a trust owning all or part of the Property, is sold or
btherwisb tfahsferred (othefthan. by'd<rrise'6f d&cerit} by tfid Borrower, and
(ii) The' Property is :hdt occupied '.by. the purchased*Or* grantee as'his'dr her principal residence, or the
ptochasef dr'grahtee does so o&ftpy*'the Property but hi? or her credit has not been approved in accordance "With the requirements of the Secretary. * *

No Waiver. -Ifcircumstah&s; occur thaL wdufa. jfaYihit-Lender tb'rdquifejunfoediate pdyfadhf in-full, but
■ Lender does not require suidrpayiiierits; Lender does not waive its rights with respect to subsequent events.

(dyRegulitidnS of HtJD Secrietidy. -'In■ many ;-cifeuriisfances regulations 'issUt^^by 'the'Secfctaj^ wilL limit
'■ Lerider's. Hght^''In the case Of payment'defaults' to require immediate payiricnt .fa fall and foreclose if not paid.
.This¹ Sccriity instrument 'does not authorize acceleration or -foreclosure if-riot permitted by regulations of the
Secretary. 7 < •H-iy

(e) Mortgage Not insured. Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible .for insurance under the National Housing Act Within 60 days from the date hereof, Lender may, at its Option arid ridtwithstaiidfog anythinginParagraph 9, re<|i?ifbimmediate payment fa full of ail sums secured •• bythisSecUrityTnstrUment.'Aiwritten sfalefaent Ormty authorize agent dated subsequent to 60 days from the /date' hereof, dedinfag-to> fasfae^ difeii Security;'Jristfum^nL-.tmd the Note secured thereby, shall be deemed •' 'conclusive proof of such ineligibility. NotWitiistfaiding the foregoing this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to (emit a mortgage insurance premium to the secretary, •

■;-i0? Refaitutemrint; Borrower has a right•'Siife 'ladder han required immediate payment in full because of Borrower's failure to pay an amount due unriler the Note or this Security'Instrument. This right applies even after foreclosure prptc&fingsafc instituted; To fttfriitate,'thp fedtity fastrufitehtf Bori'owdr shall tender in a lump sum all amounts required Idbfing Borrower's Account diiriont thefading, to the cXtcUt tfey are obligations of Borrower under this Security Instrument fdrectesur6-' costs and: reasonable and ctistoniary 'dtfpfaeys' fees and expenses properly associated with tHoreclosure proceeding.. Upon reinstatement by Borrower, this Security Instrument and the Obligations that it secures shall Tcmaln in effect as if Lender had not required Immediate payment fa fall. However, Lender Is not required to permit rcfastatenienl if? (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding (he commencement of a current foreclosure proceeding, (il) reinstatement wifi preclude foreclosure on different grounds fa the future, of (iii) 'reinstatement wifi adversely affect the priority of the lien created by this Security Instrument.

Ptyp3ot3

M f » V 1659 596 V*

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the lime of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not bo required to commence proceedings against any successor In Interest or refuse lo extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any rigid or remedy shall not be a waiver of or preclude the exercise of any right of remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit (he successors and assigns of Lender and Borrower, subject Io the provisions of paragraph 9,b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Iristfilment but does not execute the Note: (a) is consigning this Security Instrument only to mortgage, grant and ednyoy that Borrower's intercut in the Properly under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shali be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to (he Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first ciass mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event thaCany provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall hot affect other provisions of this Security Instrument or the Note which can Be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy Of this Security *Instrument.*

|6, **Ass^trincrit of Rerih.,** Borrower Unconditionally assigns 'god'transfers to Lcftdef hi) the rents and revenues of the Pfopcfty7Boiroy?er authorizes Leader or Lender's agents to colled, die rents and revenues'arid hereby directs each tenant of the Property to pay the rents Id Lender *or* Lender's.agents. However,-prior to Lender's notice to Borrower of Borrower's breach of any covenant of ^ebment in'¹the Seciiri^ Instrument, Borrower shall collect and receive all rents and revenues of the Property as trusteefor the beriefit of Lender aid Borrower. This assignment of rents constitutes an absolute assignment and riot an assignment for additional security only.

If. Lender gives notice of breach •toBored^et;'. (a) all rente tecciyed by Bor/oWer shall be held by Borrower as trustee for bericfit.of Lender'only,¹ to be appliedi to the sum$ se'ciired. by the SecurityInstrument; (b) Lender shall be entitled to collect arid receive "all of the rents of the Property; arid (cj each teriant of (Ke Property shall pay ail rents due arid Unpaid fo Lender .'or Lender's agent oh Lenders written demand to the tenant..

Borrower has not executed any pridr assignment of the rents and has riot and will not perform any act that Would prevent Lender from exercising its rights under lids paragraph 16.

Lcrife >hhil hot be re^ubeif to writer upon, take control of or maintain the Property before or ifter giving notice of breach to Borrower , lldwbyer, Lender or a judicially appointed receiver 'mayMb so at' ajiytiiiie, there'is a breach. Any application of rents shhll hot cure or waive any default or invalidate any other right Of remedy of Lender. This assignment .of tcrits of the PfOpcrty shall teririinate wheft the debt secured by Security instrument is paid iri full.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph;|7, including, but not limited to, attorneys' fees and costs of title evidence/A'.}.'-/• 'V« •    •    7/•    •

18. *Release...* Upon payment of all sums *secured* by.'^.Security. Instrument, this Security Instrument and the estate.coriveyed shail terminate arid become.void. After sricK'occurrence, Louder sKUI discharge and satisfy this Security InstrUmeht without charge to Borrower^ Borrower shall phy any recordation «^ts.

19. **Waivers.** Borrower; the ..^tcnf.permitfod by applicable law, w^yes arid releases any error or defects in ../proceedings *ip* enforce this¹ Security rristfurhent, Arid hereby waives the benefit of any present of future laws proriding for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

20. **Reinstatement Period,** Borrower's lime to reinstate provided in paragraph 10 shall extend to one hour prior to commencement Of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

21. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title *to the Property,* this Security Instrument shall bo a purchase money mortgage.

M 1659 597

22. **Interest Rate After Judgement.** Borrower agrees that the interest rate payable after a judgement is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider    ☐ Adjustable Rate Rider    ☐ Growing Equity Rider
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider    ☒ Other (please specify)
     Addendum to FHA/VA Mortgage Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_James J. Norton_      _Arcy Crute_ (Seal)
                                    ARCY CRUTE             -Borrower

_____      _____ (Seal)
                                                                   -Borrower

_____ (Seal)      _____ (Seal)
                     -Borrower                                              -Borrower

Certificate of Residence

I, TANYA KRAMER      , do hereby certify that the correct address of the within-named Lender is

         35 NORTH 6TH STREET
         READING, PA 19601

Witness my hand this 26TH      day of JUNE      , 1995 .

                                       _Tanya Kramer_
                                                Agent of Lender

COMMONWEALTH OF PENNSYLVANIA, PHILADELPHIA County ss:

On this, the 26TH day of JUNE , 1995 , before me, the undersigned officer, personally appeared ARCY CRUTE

                                             known to me (or satisfactorily proven) to be the person whose name IS subscribed to the within instrument and acknowledged that HE/SHE executed the same for the purposes herein contained.
     IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

                                    _James J. Norton_

NOTARIAL SEAL
JAMES J. NORTON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 13, 1998

                     Title of Officer

PHFA Form 32

M 1659-598

Seller's Guide
10/20/92

**PENNSYLVANIA HOUSING FINANCE AGENCY**
**SINGLE FAMILY MORTGAGE REVENUE BOND PROGRAM**

**ADDENDUM TO FHA/VA MORTGAGE INSTRUMENT-**

As long as this mortgage is held by the Pennsylvania Housing Finance Agency, the Lender may declare all sums secured by this mortgage to be immediately due and payable if:

1. All or part of the property is sold, leased or otherwise transferred (other than by devise, descent or operation of law) by Borrower to a purchaser or other transferee who does not meet the following eligibility criteria set forth in Section 143 of the Internal Revenue Code of 1986:

   (a) the purchaser must reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer.

   (b) unless the residence is in a targeted area at the time of the sale or transfer the purchaser must not have had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer.

   (c) the acquisition cost of the residence cannot exceed 90 percent of the average area purchase price (110 percent for targeted area residences).

   (d) the purchaser's income cannot exceed that established by the Pennsylvania Housing Finance Agency under its applicable regulations or program guidelines in effect on the date of the sale or transfer.

2. Borrower fails to occupy the property described in the mortgage at any time during the term of the mortgage without Lender's prior written consent; or

3. Borrower omits or misrepresents a material fact in an application for this mortgage.

Upon prior notification to the Agency of the intended assumption, the Borrower shall provide the Lender with evidence establishing that the assuming mortgagor qualifies as an "Eligible Borrower" within the requirements of Section 143 of the INTERNAL REVENUE CODE of 1986 and meets the Maximum Income Requirements of the Agency. The Borrower shall also submit an executed Assumption Agreement on the form provided by the Lender.

References are to the Internal Revenue Code in effect on the date of execution of the mortgage, and are deemed to include trie implementing regulations.

6/26/95.
Date

/Signature of Morcgacor

_____
Date

Signature of Mortgagor

August 1993